268    49 NEW YORK SUPPLEMENT    (Sup. Ct.

and 83 New York State Reporter.

(25 App. Div. 129.)

PEOPLE ex rel. WELLS v. HART et al.

(Supreme Court, Appellate Division, Second Department. January 21, 1898.)

DISCHARGE OF POLICE OFFICER—EVIDENCE.

Upon the trial of a police officer before the commissioners, on a charge
of disrespect towards his superior officer and conduct unbecoming an offi-
cer, consisting, as set forth in the specification, in the alleged use of an
opprobrious epithet with reference to his superior, he cannot be convicted
on mere proof that he used the opprobrious epithet, unless it is also shown
that it was used with reference to the superior.

Hatch and Cullen, JJ., dissenting.

Certiorari by the people, on the relation of William E. Wells,
against Cornelius A. Hart and Charles W. Alexander, police com-
missioners of Richmond county, to review a judgment finding re-
lator guilty of disrespect, and dismissing him. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and WOODWARD, JJ.

David Thornton, for relator.

Sidney F. Rawson, for respondents.

WILLARD BARTLETT, J. The relator was a patrolman on the
Richmond county police force. He was tried by the police com-
missioners, under section 13 of chapter 108 of the Laws of 1897,
upon a charge of disrespect towards his superior officer and con-
duct unbecoming an officer. There were two specifications. The
first alleged that while on duty at New Brighton, on the night of
August 24, 1897, the relator, when asked by his superior officer,
Roundsman Frank S. Hodge, if he, Patrolman Wells, was off duty,
said: "No. No jay like you can pound me. If you do, you will
take a tumble." The second specification alleged that subsequent-
ly, on the same evening, in the same neighborhood, the relator said
to three persons: "That [using an exceedingly opprobrious epi-
thet] is trying to pound me;" thereby referring to the aforesaid
roundsman, Frank S. Hodge. Upon the hearing before the police
commissioners, the relator was declared not guilty upon the first
specification, but adjudged guilty of the charge as stated and set
forth in the second specification. Only two witnesses testified that
the relator made use of the language set out in the second specifi-
cation, and neither of them would say that the remark was spoken
of or addressed to the roundsman. Even the roundsman himself
was unwilling to assert that he understood the words to apply to
him; for, when asked by the relator whether he interpreted the
insulting term as applicable to himself, the roundsman responded:
"Will not swear to that. Haven't testified to that fact. Testified
to your remarks." The other witness who heard the words used
said he had not any idea to whom the relator alluded until the
roundsman stepped out from a neighboring store, into view, just
as the remark was made. Then he says it came to his mind that
the conversation might have been directed towards Hodge. In
the evidence of the persons who actually heard the words spoken,
there seems to be absolutely nothing to show that they were spoken

of and concerning the roundsman. If, however, the relator, earlier in the evening, had accused the roundsman of "pounding" him, as set out in the first specification, the police commissioners might very well have inferred that the relator had the roundsman in mind, and intended to characterize his conduct in what he said subsequently. But it is impossible to see how the commissioners could have acted on this view, for they acquitted the relator of the charge as stated in the first specification. As the case stood, therefore, when the commissioners came to pass upon the second specification, there was no circumstance tending in the slightest degree to show to what person the relator referred by the improper language he is said to have used. Their action in regard to the first specification was, in substance, a determination that he had not previously said anything about the roundsman "pounding" him; and, without that statement, the objectionable epithet subsequently used might just as well have referred to anybody else as to the roundsman.

This court is committed to the proposition that the technical formality of a criminal prosecution need not and should not be required in proceedings to discipline police officers. People v. Welles, 18 App. Div. 132, 45 N. Y. Supp. 713. I am not disposed in the least to qualify what was said on that subject by Mr. Justice Cullen in the case cited. It seems to me, however, that the defect here is very much more than a mere irregularity or informality. If the commissioners were right in their decision upon the first specification, there was no evidence in the case, except that which they had already rejected as unworthy of credit, that would permit any judicial tribunal to find that the second specification was true.

In my opinion, the determination ought to be annulled. All concur, except HATCH and CULLEN, JJ., dissenting.

HATCH, J. I dissent from the views of the court as expressed in the opinion of Mr. Justice BARTLETT, for the reason that I do not think it can be affirmed that there was no evidence upon which the commissioners were authorized to find the relator guilty of the offense charged in the second specification. On the contrary, I am of opinion that the evidence fairly sustained the charge contained therein, and that this court should not interfere with such conclusion. It is undisputed—indeed, it was admitted by the relator—that he made use of an opprobrious epithet; and, while he varied the form in which he claimed to have used it, yet it remained in its objectionable features the same. That the epithet was of a character unbecoming an officer engaged in the discharge of his duty, when applied to his superior officer, is conceded. It became, therefore, the duty of the commissioners to determine whether the language was intended to be applied to the roundsman. Upon this point I think that the evidence preponderates in favor of the conclusion reached by the commissioners. They were entitled to take into consideration, not only the oral statements, but the attendant circumstances.

It appeared from the testimony of the relator that he had had
some words with the roundsman before he made use of the epithet.
There seems to have been no occasion for the relator to make the
remark with reference to any other person, and it followed closely
upon the heels of the charge by the roundsman that the relator
was off his post. When the remark was made, the roundsman
spoke to the relator of its having application to him; and the re-
lator interposed no denial that the language was so intended, and
made no protest or excuse that it should not be so considered.
The fact that the roundsman upon the trial would not say that
the relator meant to apply the language to him does not .change
the fact that the epithet was made, nor the right of the commis-
sioners to find that it was applied to the roundsman, and referred
to him. The testimony simply shows that the roundsman related
the circumstances as they occurred, and in no substantial respect
did he vary his statement in this regard. It was not for him to
say for whom the epithet was intended. That was a fact which
the commissioners were to determine. And, if objection had been
interposed, the answer would not have been proper, as it would
have determined the question which the commissioners were to try,
and is not within the exceptions rendering such testimony compe-
tent. It is quite clear that the charge contained in the first specifi-
cation was not considered, for the reason that respecting such
charge the relator desired to call other witnesses, and, as this ne-
cessitated an adjournment, this charge was disposed of by an ac-
quittal. Upon the second charge all of the evidence which either
party had to give was received and considered. We may think that
the punishment was unnecessarily severe, but with that question we
have nothing to do. I cannot resist the conviction that this case
falls within our former decisions, which require us to support the
determination. People v. Welles, 18 App. Div. 132, 45 N. Y. Supp.
713; People v. Welles, 5 App. Div. 523, 39 N. Y. Supp. 50.

For these reasons I think the determination should be affirmed.

CULLEN, J., concurs.